Good morning, Your Honor. Steve Brench for the Appellate Pamela Wood. I think it is appropriate, as you suggested, to start with the jurisdictional challenges. I'll be clear that the jurisdictional challenges, they're twofold. They come from UPH and they're only to the failure to accommodate claim. The two challenges are, one is with regard to exhaustion and one is with regard to possible waiver below. Unless you have an interest in one or the other, I'll start with the exhaustion. I can't deny that if Ms. Wood had had the assistance of an experienced employment lawyer at the time she filled it out, it would have been a much more clear rendition. On the other hand, she is protected to a large degree by the Supreme Court's decision, Law v. Pullman, that says that laymen in these situations are not to be too tightly bound to the technicalities. And also the case cited by UPH, namely BKB v. Somali Police from the Ninth Circuit, in which there are really sort of similar representations made in that complaint. And this Court acknowledged that the presentation in the EEOC complaint was, quote, exceedingly sparse and nevertheless held that there was no problem with exhaustion. And the last one I'd point to would be Weterholt v. Sears, which is a district court case, but it's very similar to this one in that the complaint was very clear about a reasonable accommodation claim to the EEOC, but not so clear about its constructive discharge. But the district court in Oregon decided that. Maybe you should point to something in the record that states the claim that you're alleging was presented. Yes, I will. In the course of the EEOC complaint, Ms. Wood fills out the entire optional discrimination section. It invites her to skip that section if there's no discrimination claim, but she filled out in detail. When asked for the basis for the discrimination. So I'm looking at ER 214, which is the charge of discrimination. Is that what you're talking about, or are you talking about something else? Are you looking at the document itself? I'm trying to. I'm not. I'm kind of looking at a summary. So can you tell us where in the record we can look at what you're talking about? I will. One second. Yes, if you're looking at the document itself, on the first page. What's the ER number? The number, I'm sorry, I don't know. I would have to go through my briefs to find out. Okay. If you'd like me to. Well, word to the wise is that if you want us to look at a document, you better be able to tell us where it is. Well, okay. I didn't anticipate that this would be the most crucial document of this presentation. Well, you started with this issue. Okay. Well, then let me make my references anyway. Okay. We'll go back and look. In this document, on the first page. What's the title of the document? The title is charge of discrimination. Okay. Okay, I think that is the document I was looking at. It's at ER 214, I believe. I'm looking at charge of discrimination, EEOC Form 5. Is that what you're talking about? Yes. Okay. On the first page, in the initial factual description, he talks about being subjected to discriminatory treatment based upon a disability. On the second page, I'm sorry, on the... I think it's only a one-page document. Well, I'm sorry. The document itself, as it was submitted in the record, I believe, had the attachments as well. Well, page 215 is a transcript of a recorded meeting between Keller and your client. The next page of the record we have is not part of that document. All right. Well, I can only then give you generally what's so in this. I obviously don't have the proper number for the documents. I will tell you that in the EEOC complaint, she fills out an optional section with respect to discrimination. She talks about her Crohn's disease. She talks about the fight with Supervisor Keller about disability and attendance and the connection between them. She describes Keller's fight with her about the accommodation of working at home, and she describes Keller's fight with her about discussing Woods' disability with other employees. In other words, there are, throughout the submissions to the EEOC, several references that go directly or indirectly to accommodation, including the mention of the right to work, which is the accommodation she always sought. With respect to the waiver argument made by UPH, it's characterized as a jurisdictional argument after Davis v. Electronic Arts. It may not be a jurisdictional argument, but was it raised in the district court that she was bringing an accommodation claim? You say what? Where in the district court record did she argue that she had an accommodation claim that should survive summary judgment? Okay. I have the same problem in that I have them identified, but I don't have them ---- What's the title of the document? Pardon me? What's the title of the document you're trying to refer to? Well, appearances in the complaint and in the summary judgment response of the opposition. Okay. So where in the summary judgment opposition did she argue that she had an accommodation claim that should survive summary judgment? Okay. In the complaint, paragraph 11? No. Where in the summary judgment briefing did she argue that she had an accommodation claim that survived summary judgment? Well, the challenge from UPH is as to both the pleadings and the summary judgment argument. Right. But I'm arguing how she had a claim at summary judgment that we then are reviewing when we review summary judgment. Okay. The description of the Crohn's disease, that was conveyed to UPH in the first month after the hiring, appears in summary judgment response at page 2. The discussion with killer at the time of hiring and into the employment regarding the working at home and then the taking away of the ---- I mean, does she have any section that says, do not grant summary judgment on my accommodation claim? No. So how do we not view this as waived? Well, the test, as I understand it, is whether the legal theory has been changed and or whether there is adequate record to make the ruling. So where was the legal theory argued in the district court that she had a claim for accommodation that should survive? I can't say there was. I wasn't there, of course. It was my predecessor. But that's one of the hurdles I've been working to overcome is that it wasn't actually said. However, I think in some of the cases, Davis and Ruiz and so forth, there really wasn't that sort of claim made in the district court either. But the claim was heard at this level because there was a sufficient record to make the determination. So wouldn't an accommodation claim require us to know things like whether her position really required her to be in the office or whether it could be done at home and fact issues like that that were not developed because she was not arguing that she needed an accommodation? Well, what I'm saying is it was dealt with in the litigation. Even a cursory look at the deposition transcript, which unfortunately was the only meaningful discovery taken by either side, but that deposition taken by UPH's Council of Wood is full of discussion of her wanting to work at home, her interactions with Keller, whether or not there was an interactive process or not. How about whether it was a reasonable accommodation given the requirements of her job? Well, she says in there that I was doing my job even without the accommodation, but I needed the accommodation and everything I did, which was working on a computer and phone calls and occasional home visits, could be done at home as well as at the office. She said that. Now, the problem is... So what's the issue that Keller was talking about, about until we get a new system? What's that about? Until we get it, I think it was a new computer system. It wasn't entirely clear to me what kind of system. But there seems to be some issue on the other side about whether there's some development they're waiting for that would make it easier to work from home. Well, absolutely. And once Wood establishes that working at home is a reasonable accommodation, which Humphrey's First Memorial Hospital also supports for this court, once that happens and the burden switches to UPH to show the essential functions, the case law says they have to show the essential functions that are affected by working at home. Right, but if you hadn't been making the argument so they didn't know they needed to develop this argument, then how do we have a developed record on this claim of accommodation? Well, it's a disgusting deposition. Part of the problem is that most of this information, what is the hardship to UPH, what are the essential functions, would come from UPH. They never did. That information never came in the course of summary judgment or anywhere else. So to this day, Wood doesn't know why she wasn't allowed to work at home when originally she told she was going to be able to. No one has ever told her. If there are essential functions that she can't do at home, no one has ever told her what they are, and she certainly isn't aware of them. And if there really is an undue hardship as is required by the case law and by the CFR, they have to say what it is. But they haven't. Not one time in this 11 months did they ever say to her, we can't do it because of such and such, ever. And so shouldn't she have argued at the summary judgment stage that they have a failure of proof on this point, so she should be entitled to summary judgment? It doesn't seem like she did that. To be honest with you, this was poorly planned. Your brief was pretty candid. Pardon me? Your brief was pretty candid in the difficulties you face, but those difficulties are difficulties we face, too. An appeal isn't a do-over. We look at what happened in the district court, and the reality is that your client's counsel did not present that issue and tee it up for the district court. And I hear you, but I'm not sure if there's anything we can do about that. Well, I think, I mean, obviously this was a determination I had to make for myself when they first came to me and said, will you do this appeal? I knew what the problem was. And it occurred to me, after I read the deposition and the exhibits that came in with the summary judgment motion, and all of which were going to be in the record, that there were more than enough facts to feed summary judgment. Now, there wasn't, I don't know if there was enough to win a trial. And if we go back to litigation, there are a lot of things I'm going to have to do that weren't done. But all we're talking about here is defeating summary judgment. Are there any material facts that are disputed? And in my view, looking through even the record we have, which admittedly is way less complete than it should be, there are lots of material facts on every element that are disputed. The district court, I believe, overlooked a lot of those facts and exercised the fact-finder job, which it wasn't supposed to. There are, I mean, you can pick any example. I mean, there's a... Okay. Well, let's look at the pay. And much of your argument is that she's been discriminated against with regard to pay. The pay rates were set before her disability was identified to the company. I mean, she was... One of the things cited is that the person who hired her expressed exasperation that she didn't know about the limitations when she was hired. So she's got a pay rate that presumably is set without reference to any disability. So what's the problem here? Well, because now, eight, nine, ten months later, what happens is they're hiring these two people who are not qualified, have not produced anything suggesting they were even qualified, much less... Well, your problem is you've got to demonstrate they're comparable. I mean... Well, I have to show that they're in similar jobs and similar conduct, but the key fact here, which to me is enough to defeat summary judgment on this issue without more, is the fact that as soon as they were hired, they were put under wood for her to teach, her to monitor, her to supervise. When does the supervisor ever have fewer qualifications and experience than the person that she's teaching and monitoring? Well, the person who was there first. I mean, that's pretty common. You wind up training... The person who's there first winds up trying to train the person who comes in next. I mean, that's just how sequential hiring systems often work. So no question your client was there first, but that... The notion that she's been unfairly treated somehow, I mean, there's a real disconnect as I look at this between her claim that it's based on some kind of discrimination and the fact that two other people happen to be paid more. What is it that connects it with some discrimination based on disability? Remember the standards she must meet to beat the summary judgment here is not onerous in this Ninth Circuit, but also a jury... Yes. I searched the record. Defendant points to additional skills. One spoke Spanish. The other had previous experience in health management. So why are they comparable? Because those are conglutinary assertions that are unsupported. The only way... It's a nice argument, but... Did you seek their resumes and school transcripts in discovery? Pardon me? Did your client seek information about their qualifications in discovery? No. My predecessor conducted no real discovery. So at that point, that's on your client, right? She can't show they're similarly situated if she didn't ask for the information in discovery. Yes. I understand the problem here, and my view is, since the standard is, could a jury... On this record, though, without having any evidence that they're similarly situated, a jury couldn't. I think that, for me, the two parts of our presentation on the compensation claim is, one, she's the supervisor, the teacher. If these people were more qualified than her, as they claim, as their justification for paying her more, then why do they have Wood teaching them and supervising? And then the other thing is the long history of conflict between Keller and Wood over her disability. And the long list of things, not just outside the 300-day period, but within the 300-day period, it was continuous. And Rodriguez, who they say made the decision, in fact ran it by Keller, and Keller was the one who was behind this decision. I'm taking over time, but let me focus on this one. Her pay rate was set without knowledge of her disability. Yes. The company subsequently hires two more employees, wind up giving them higher pay rates. Is it the contention? And so we know that your client's pay rate wasn't pressed down because of any disability. Your contention amounts to saying the company intentionally paid two other people who weren't qualified more because they wanted to screw your client because she's disabled. That makes no sense. Well, it makes sense in the context of Keller's treatment of this woman for the past 10 months. So to get back at your client, they paid these other people more, hoping she'd figure it out someday and be upset? Yes. Remember, this is the – Keller is a – Your answer to that question is yes. Ask the question again. They hired two other people, and in order to upset your client and get back at her for her conflict with Keller, they paid the other people more money, hoping that your client would someday learn about it and feel upset. That's too strong a statement, but I think Keller was fine with it happening that way. Keller is – But for discrimination, we need an intent to – I mean, there's a total disconnect here, given the timing. It doesn't make sense. I mean, we can't even assume that they didn't make more money just because the market had changed and now you need to pay employees more because it's a more competitive job market. I mean, there's no way that we know that because someone made more when they're hired later that it has anything to do with discrimination from someone they hired earlier when they didn't even know when they set her salary. Let me offer you this. I understand you're concerned, but let me offer you this. At the very beginning of the relationship, Keller was enthusiastic about Wood and hired her. He said, you're going to get time off, and then the first month she finds out about the Crohn's disease, and the relationship takes a 180. Keller is angry that a crazy October meeting happens and all the things after that. This is a woman who felt she was betrayed, lied to, and didn't want this person around. Almost everything that happened after that time, I believe, was trying to get rid of this woman, including the treatment of her in August 2009. Now, we can say that just sounds unacceptable because people don't do that to people. Well, in the workplace, people do do that to other people, and this woman, Keller, had a long string of events, pulling Wood into private places where no one could hear and threatening her in various ways all about her disability. Given that background, combined with the fact that it appears she was the more qualified person because she was supervising and training those people, a jury could decide that this was a discriminatory event. Thank you. Okay, thank you. If I have time left, I'll reserve it. Well, you're three minutes and 44 seconds over. With that, I apologize. Thank you, Your Honors. May it please the Court, I'm Chris Pastore on behalf of Pelley and defendant at University Physicians Health Care, and I'll refer to them as UPH. Plaintiff is obviously unhappy about the result below, but more than that, seems to be unhappy about the decisions and strategic choices that were made by her prior counsel well before the district court. Plaintiff is attempting to remedy or circumvent these decisions through this appeal, but this is not the proper forum for that issue and those issues that happened below in those strategic choices. Plaintiff and this Court are bound by the arguments and the allegations and the claims and the facts alleged before the district court at the motion for summary judgment. As much as plaintiff may want to now or wish she had then, plaintiff can add new facts or add new claims or add new allegations or even theories under the same laws to try and assert a different claim. When keeping the focus on the claims and facts presented to the district court on summary judgment, it's clear that the district court's issuance of judgment in favor of UPH is proper to turn to the failure to accommodate claim. I think I can address both the waiver and then the jurisdictional arguments together. Contrary to plaintiff's argument, she did not assert a failure to accommodate claim below. In fact, she did the exact opposite. She asserted throughout her employment and then throughout the litigation that while she had a disability, it didn't affect her ability to do her job in any way, shape, or form, and this is reflected by in her EEOC charge, which is the Wood excerpt of Record 214, doesn't make any mention of requesting or being denied an accommodation. In the EEOC intake questionnaire, which is at UPH excerpt of Record 61 and 63, she specifically answers the question, did you request or need a reasonable accommodation with no, and then leaves the subsection of that question blank where it's requested, what accommodation did you need, who did you ask of it from, and when did you ask it. That is all left blank. She doesn't respond. Plaintiff's complaint never alleges that she requested or was denied an accommodation. She sets it up entirely as a disparate treatment claim that it was a benefit of employment granted to other employees but not granted to her. As such, UPH's motion for summary judgment didn't include any substantive argument about a failure to accommodate because throughout the litigation, throughout her employment, she never made any such claim. To wit, during her deposition, she stated at least six times that her disability did not affect her job in any way and that she did not need an accommodation or anything from UPH to perform her job other than being allowed to take time off from work, and there's no dispute that she was given all the time off she needed to go to these doctor's appointments. Is the intake questionnaire that you just cited at the ER-61, is that the attachment that he was talking about that he couldn't find? I don't think so. We submitted our own excerpts. I think this one is something you submitted. Yeah, that's what we submitted, so I don't know if it's attached to the EEOC. It would have been part of the subpoena documents from the EEOC, but whether it was attached to the charge, I'm sorry, I can't tell you. So as I said, during six times during the deposition, she denied that she needed an accommodation or that there was any issue with her disability affecting her work. Plaintiff's opposition, I think, to the MSJ is particularly relevant here for a couple of reasons. One, with respect to working from home, the opposition states only that plaintiff was subjected to unequal treatment because she was paid less and not given such benefits, such as working from home, as other case managers. That's that Wood excerpt of Record 77. So that is, she's setting up and explaining the quintessential disparate treatment claim, that there was this benefit, working from home, offered to some employees but not to her, and she was positing that the reason that benefit wasn't offered to her was because of her disability. She never claims in the complaint anywhere or in this opposition to summary judgment, as Your Honor has pointed out, that she was requested or denied an accommodation. Furthermore, in her opposition, she does point out that there was a claim in her complaint that she believes UPH did not move on at summary judgment the ADA retaliation claim. So it stands to reason that if she thought there was this other claim in her complaint or that she had asserted during litigation a failure to accommodate, she would have made that similar argument. And by not doing so, I think that's the clearest evidence that plaintiff, for whatever reason, strategically chose not to assert a failure to accommodate claim. The test that's applicable, I think plaintiff has conflated part of the tests and the exceptions. The test is whether or not the claim was brought sufficiently before the district court so that it could rule on it. And generally, under research court versus Westport, a party must specifically and distinctly argue the claim, and that simply did not occur here. And any of the facts cited by, or I'm sorry, the cases cited by plaintiff don't really apply to the situation at all. If you look at, I think, Ecological Rights Foundation versus PG&E, Riggs versus Prober & Raphael, and Tibble versus Edison International, those are all cases where a plaintiff, or perhaps a defendant because there's some defense issues in there, brought theories of relief or theories of an affirmative defense under a statute, but not all of the possible theories of relief under the statute. Once those were dismissed or discharged or judgment rendered in the other way at the district court, then at the appeal level, the appellants in each of those cases stated that, well, there's these other theories under these same statutes that we raised that could be supported by some of the facts in the record, but we didn't exactly argue them specifically in the court held. That's not enough. This court held that's not enough. You have to specifically raise these arguments. You didn't raise the arguments, and so the fact that there's merely some facts in the records or a statement here or there doesn't bring the claim. The claim wasn't sufficiently raised for the court to rule on it. Here it's pretty clear the court didn't rule on it because it was not raised. With respect to the pay issue, the facts on that, I think the court pointed out, are really clear, and it's important to recognize that plaintiff has an obligation. It was the plaintiff's burden initially to demonstrate that any disparate treatment, in this case disparate pay, was because of or caused by her disability, and the facts are simple and undisputed. As Your Honors pointed out, her pay was set by Deb Keller before Deb Keller knew she had a disability. Then seven or eight months later, these other individuals, Margarita Wellman and Diana Carnes, were hired by Martha Rodriguez, who plaintiff, and it's undisputed, at least in the record below, plaintiff seems to dispute it now, but in the record below, plaintiff admits that Martha Rodriguez, her direct supervisor, and the person who set the pay rates for these new employees, did not discriminate against her because of her disability, and generally didn't think she discriminated against others because of, or discriminated against disabled individuals in general. And so these decisions were made solely by Martha Rodriguez without the input from Keller. The record's clear on that, despite plaintiff's contention to the contrary. So applying a merit versus farmer's insurance, there can be no causal connection where there's no evidence that the decision maker harbored any discriminatory animus. So here we have Deb Keller setting plaintiff's pay before she knows that there's a disability, so her pay rate can't be influenced by the disability, and then we have Margarita and Diana's pay rate set by Martha, who plaintiff admits did not discriminate against her, so we have no decision maker in these issues, there even being the possibility that they had any discriminatory animus. I guess the argument would be that maybe the market changed, or for whatever reason she could have been paid more and she claims would have been paid more, but for the fact that her supervisor didn't like, or discriminated against her on the grounds of her disability. Certainly that's plaintiff's argument, but plaintiff needed to provide some other evidence that either she requested a raise and it was denied or there was a situation. She did. I mean, as I understand it, she was told wait for your annual review, but there is some indication she asked for more. She did ask for more, yes. When she noticed the difference, she asked for more. UPH looked at the difference, thought that it was justified, certainly found no evidence that it was based on any discriminatory animus, and so it chose not to change the pay rate. I think what plaintiff would have to prove here is that there were other individuals who received pay raises during this time and she didn't, or that UPH has, when presented with this situation in the past, raised everyone's pay to a similar or closer level where they saw that there was some disparate pay between the employees based on their qualifications, but there's simply no evidence of that here. It seems somewhat circular for plaintiff to argue, I thought I was paid discriminatorily. The company looks at it, decides that's not the case, and then they're going to still discriminate against her or retaliate against her if they don't raise her pay and do what she asked when there's no underlying reason indicating that the pay was based on an inappropriate reason. Was it perhaps unfair? Maybe, we'll never know, but there's certainly no evidence that it was based on any discriminatory animus. Further, the record indicates that Martha Rodriguez, who hired these individuals and didn't have any discriminatory animus, these pay rates came from individual negotiations with these employees and that these employees did have qualifications, or I should say experience, because there's a difference between experience and qualified for the job. Experience is one, Margarita could speak Spanish and Diana had more previous experience as a case manager, not specifically an adult case manager, and that's reflected in the transcript of the conversation between plaintiff and Ms. Keller, and so plaintiff has not demonstrated that she was comparable or similarly situated with respect to these other individuals based on their experience. They certainly worked the same job and did the same task, but when we're talking about pay, the similarly situated has to be about their experience level and there's nothing in the record that indicates that plaintiff was more experienced than these individuals. Plaintiff tries to make hay out of the fact that plaintiff trained these new individuals when they started and cites numerous case law for that proposition, but all that case law I think is an opposite. Those are cases regarding internal promotion cases where you're obviously evaluating employees who are similarly situated to some degree applying for a job, and then when one of those employees gets promoted but the person who claims discrimination wasn't, but has to train the other employee, then it is an indication that the qualifications were different here. Here we just have a situation of, as Your Honor has indicated, sequential hiring, so Margarita and Diana were hired after plaintiff. Plaintiff then trains them for their new job, but that doesn't mean that they had experience or qualifications that plaintiff did not have. I wanted to touch briefly on, if Your Honor has any questions about the district pay or the waiver, the retaliation claims asserted and adjudicated by the district court. Plaintiff claims that UPH did not move for summary judgment on the ADA retaliation claim. I think a little background here is helpful. Count two of the complaint was ADA retaliation. Count three of the complaint is AC or ACRA retaliation, which is Arizona's functional and literal equivalent of the ADA in Title VII wrapped up together. These claims asserted the exact same thing, that UPH retaliated against plaintiff based on this August 2009 hotline complaint she made with these four incidents of conduct, being required to meet with Keller after the hotline complaint, being accused of missing more work than she was supposed to, being asked to fill out ADA paperwork, and having to meet with Martha Rodriguez, her direct supervisor, for one-on-one weekly meetings. The only difference between these two claims, the one, the ADA retaliation and the ACRA retaliation, is that under count three, ACRA plaintiff claimed that this conduct that I just listed also supported a constructive discharge claim under Arizona law. The district court ultimately held that wasn't the case and that's not an appeal here, but for our purposes these claims are exactly the same factually. They're also exactly the same legally. The ADA retaliation claims and ACRA retaliation claims are analyzed in the exact same manner because it's essentially the exact same law. Whenever a district of Arizona case hears or rules on an ADA claim and an ACRA claim, or even for that matter a Title VII and an ACRA claim, it conducts the exact same analysis because they're subject to the exact same framework, whether that be how the prima facie case is established through McDonnell-Douglas or direct evidence or affirmative defenses such as Ellerith-Ferriga. There's no need, and a court never does, do a separate analysis for the ADA and then do a separate analysis for ACRA. It does one analysis, and that's what UPH did in its motion for summary judgment. It analyzed the retaliation claims under both statutes and then also looked at the constructive discharge claim, and it analyzed each of those four incidents of alleged retaliation in its motion. Plaintiff addressed them in her opposition and then in the reply, and the court certainly did an exhaustive analysis of whether or not the retaliation standards had been met under the ADA, which is the exact same as the ACRA. So there was no need for the court to engage in both two separate analyses One final note with respect to the adverse actions. Plaintiff... The parties agree on the standard that the adverse action standard is reduced in the retaliation framework and that it requires only that the conduct would reasonably deter future protected activity. Plaintiff's view of this standard, however, sort of takes it to the exact extreme where if a company in response to or trying to deal with a complaint did anything to any personnel action with respect to the employee other than saying your complaint is 100% valid and we're going to provide you the remedies you requested, any of that personnel action is going to be... have a deterrent effect. That's simply not the standard. There has to be some conduct that would encourage the employee not to do that, and I think the court did a good analysis that there's none of that in this case. If you don't have any questions, I'll be... Thank you. Thank you. We thank both counsel for the helpful arguments. The case just argued is submitted.
judges: Fernandez, Clifton, Friedland